23058. TOOLE et al. v. GALLION.

A<small>RGUED</small> J<small>ULY</small> 13, 1965—D<small>ECIDED</small> S<small>EPTEMBER</small> 13, 1965.

*Richardson & Chenggis, R. Bruce Richardson,* for plaintiffs in error.

QUILLIAN, Justice. The record shows that the defendants had made application to adopt the child and the mother had given her consent or release of custody to them. The applicant predicates his right to custody on the allegation that he is the lawful father of the child, in recognition of the law of this State that: "The mother of an illegitimate child shall be entitled to the possession of the child, unless the father shall legitimate him as before provided. Being the only recognized parent, she may exercise all parental power." *Code* § 74-203.

Since it plainly appears from the record that the mother had a prior undissolved marriage which existed during the relationship between her and the applicant and that the applicant was not certain his prior marriage had been annulled, it is evident that no valid common law marriage could exist. *Williams v. Lane,* 193 Ga. 306, 309 (1) (18 SE2d 481); *Gearllach v. Odom,* 200 Ga. 350, 351 (37 SE2d 184); *Code* §§ 53-101 and 53-102. However, when the legitimacy of a child is involved, there is authority by a split decision of this court, *Campbell v. Allen,* 208 Ga. 274 (66 SE2d 226), that a bigamous common-law marriage is within the purview of *Code* § 53-104 which provides: "Marriages of persons unable to contract . . . shall be void. The issue of such marriages, before they are annulled and declared void by a competent court, shall be legitimate." Thus, the sole question for our consideration is whether there was a valid attempt to enter into a contractual agreement for a common law marriage.

In *Peacock v. Peacock,* 196 Ga. 441, 451 (26 SE2d 608), this court quoted with approval 38 CJ 1319, § 94, stating that: "With regard to common-law marriages effected by the express

agreement of the parties, a distinction is made between contracts per verba de praesenti, that is, where the parties take each other in the present tense, implying that the marital relation is constituted immediately, and contracts per verba de futuro, which imply no more than that the parties will marry each other at a later time. Contracts of the former sort, when duly acted upon, create a valid marriage, while words evidencing only the intention to be married in futuro are ineffectual even where followed by cohabitation. . . Words showing only an intention to contract marriage in futuro will be ineffectual to establish the requisite consent in any event; and unless they are followed by a new promise express or implied in praesenti, the copulation of the parties is meritricious." Moreover, "if a cohabitation between a man and a woman is shown to have been illicit in its inception, in the absence of proof to the contrary the illicit relation will be presumed to have continued throughout the period of cohabitation. Such presumption may be overcome by direct or circumstantial evidence affirmatively showing that, pending the illicit relation, the parties entered into an agreement to become husband and wife, and thereafter continued the cohabitation in the new relation. The burden of proof is upon the party asserting the agreement." *Foster v. Foster,* 178 Ga. 791 (3) (174 SE 532).

When reviewing evidence, this court has repeatedly held: "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is self-contradictory, vague, or equivocal." *Douglas v. Sumner,* 213 Ga. 82, 85 (3) (97 SE2d 122); *Bullard v. Bullard,* 214 Ga. 122, 124 (2) (103 SE2d 570). Applying these rules, we consider the present record. Here the evidence given by the applicant showed that there was no present intent to marry when the mother and he commenced to live together; furthermore, there is no showing that any such agreement was ever entered into. Even the mother's letter, although stating that they lived together as man and wife, showed that they intended to marry "as soon as [they] could" and she lived with him "without being married." Construing the evidence as a whole, it was shown, conclusively and without material contradiction,

that the relation between the putative father and the mother of the child was an arrangement of convenience which constituted not an attempted marriage, but no more than a meretricious relationship. Hence, under the law, the applicant had no right to custody of the child.

*Judgment reversed. All the Justices concur.*